### IN THE UNITED STATES DISTRICT COURT FOR THE
### WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STEVEN CRAIG DICKEY,             )<br>                                                       )<br>            Plaintiff,                   )<br>vs.                                                )     NO. CIV-10-0168-HE<br>                                                       )<br>IVEY MECHANICAL COMPANY, LLC, )<br>a foreign limited liability corporation, and )<br>RICK TIMS,[1]                           )<br>                                                       )<br>                                                       )<br>            Defendants.              ) | |

### ORDER

Plaintiff Steven Dickey sued Ivey Mechanical Company, LLC ("Ivey") and Rick Timms, its employee, alleging Timms injured plaintiff during an altercation at a job worksite. Plaintiff asserts negligence claims against both defendants and also seeks punitive damages, asserting that defendants' conduct was "grossly negligent and in reckless disregard" of his rights. Specifically, plaintiff asserts Ivey is liable under a theory of respondeat superior for the alleged negligent conduct of Timms and, alternatively, is liable for its alleged negligent hiring, retention and supervision of Timms.[2] Ivey has moved for summary judgment on both of plaintiff's negligent claims and his request for punitive damages.

Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

---

[1] *Defendant Timms' name apparently was misspelled in the case caption. Both parties, in their briefs, refer to Timms, not Tims.*

[2] *In Oklahoma, a negligent hiring, supervision or retention claim "is available if vicarious liability is not established." N.H. v. Presbyterian Church (U.S.A.), 998 P.2d 592, 600 (Okla.1999).*

Fed.R.Civ.P. 56(a). The court has viewed the evidence and any reasonable inferences that might be drawn from it in the light most favorable to plaintiff, the nonmoving party, and concludes defendant's motion should be denied in part and granted in part.

The pertinent facts are relatively simple and undisputed, at least up to the point of the final confrontation involved here.[3] Employees of Dane Electric and Ivey were working on a construction jobsite. Plaintiff worked for Dane Electric and defendant Timms worked for Ivey. Timms was Ivey's manager and project superintendent, with responsibilty for the company's day-to-day operations on the project. On August 12, 2009, plaintiff became angry because ductwork installed by Ivey prevented the completion of certain electrical work. He threw a walkie-talkie radio, which struck Mike Hammer, an Ivey employee, in the arm. Hammer went and told Timms what had happened. A little later, Timms was told that plaintiff had grabbed another Ivey employee, Candido Rocha. Timms reported the throwing incident to the general contractor's superintendents, Ken Sleeper and Paul Boren, who assured him the matter would be handled.[4] Timms then decided to go speak with Chic Harrison, Dane Electric's project superintendent and plaintiff's boss. He went to the Dane Electric job trailer and found plaintiff rather than Harrison. Timms testified that he "went straight over to Mr. Dickey and did get nose to nose, and ... let him know that if he put his hands on any other Ivey employees out there again, that he was going to be dealing with me."

---

[3]*To the extent there is a factual dispute, the court has adopted plaintiff's version of what occurred.*

[4]*There is a dispute as to whether Timms was advised of the incident with Rocho before or after he reported the problem to Sleeper and Boren.*

Plaintiff's Exhibit 3, p. 74.  An altercation followed during which plaintiff stepped towards Timms, attempting to "bluff him out."  Defendant's Exhibit 2, p. 54.  Timms then hit plaintiff with his hard hat and pulled plaintiff towards him.  Plaintiff fell and was injured.[5]

Sonny Storrs, Ivey's human resources director, testified that Timms was justified in going to talk to plaintiff's supervisor because "at that point he [was] doing his job protecting his [Ivey's] employees and looking out for everyone."  Plaintiff'Exhibit 4. pp. 76, 78.  Storrs stated that Timms was acting outside the course and scope of his employment "[w]hen he started a fight in the trailer with Craig Dickey after he was attacked."  *Id*. at pp. 77-78.

Negligence – respondeat superior

An employer may be held responsible for the tort of an employee if the tort was "committed in the course of the employment and within the scope of the employee's authority."  Baker v. Saint Francis Hosp., 126 P.3d 602, 605 (Okla. 2005).  While an assault on a third person usually is not within the scope of employment, an employer may be liable for an employee's tort "where the act is incidental to and done in furtherance of the business of the employer even though the servant or agent acted in excess of the authority or willfully or maliciously committed the wrongs."  *Id.*  In other words, an employer can be held accountable for an employee's conduct "where the employee was acting within the scope of authority to do the particular thing rightfully that was subsequently done in a wrongful manner.'"  *Id.*  "[T]he answer to the *respondeat superior* issue primarily lies in determining

---

[5]*It's unclear whether plaintiff fell because his knee was injured or fell and was injured.*

whether [the employee] had stepped aside from [his] employment at the time of the offending tortious act(s) on some mission or conduct to serve [his] own personal needs, motivations or purposes." *Id*. at 607.  The question is whether the employee's "acts were so far removed from any work-related endeavor and geared, instead, toward a personal course of conduct unrelated to [his] work so that it would no longer be appropriate to hold [his] employer responsible for [his] act(s)." *Id*.

The Oklahoma Supreme Court has repeatedly held employers liable for their employees' torts.  In Nail v. City of Henryetta, 911 P.2d 914 (Okla. 1996), a police officer pushed a handcuffed boy to the ground breaking his nose, cutting and bruising him.  The Oklahoma Supreme Court concluded that, while the officer clearly was acting within the scope of employment when he arrested the boy and took him to jail, a jury had to determine whether he was still acting with the scope of employment when he shoved the boy.  In Ada-Konawa Bridge Co. v. Cargo, 21 P.2d 1 (Okla. 1933), a jury assessed damages against a company whose employee, a toll collector, shot a driver for failing to pay the toll.  The Oklahoma Supreme Court upheld the verdict, reasoning that the shooting was committed in the course of employment because was the toll collector's responsibility to prevent individuals from using the bridge without paying the toll.  *See* Baker, 126 P.3d at 605-07; Rodebush v. Oklahoma Nursing Homes, Ltd., 867 P.2d 1241, 1245-46 (Okla. 1993).

Here, Storrs testified that it "was within [Timm's] job duty to protect his employees and try to go talk to the electrician superintendent to work things out.  That was in his job description."  Plaintiff's Exhibit 4, p. 78.  Arguably, Timms was authorized by Ivey to

perform the type of task that might result in physical contact.

This is not a situation where only one reasonable conclusion can be drawn from the facts. The question of whether Timms was acting within the scope of his employment during the fight must be decided by a jury. *See* Baker, 126 P.3d at 606-07. Ivey is not entitled to summary judgment on plaintiff's negligence claim.

For an employer to be found liable for negligence in hiring, supervising or retaining an employee, the employer must have had reason to believe, at the critical time of the tortious incident, "that the person would create an undue risk of harm to others." N.H. v. Presbyterian Church (U.S.A.), 998 P.2d 592, 600 (Okla.1999). "Employers are held liable for their prior knowledge of the servant's propensity to commit the very harm for which damages are sought." *Id.* The court agrees with defendant that there is no evidence demonstrating it had prior knowledge of Timm's alleged propensity to become involved in a physical altercation. Ivey knew that Timms was fired from his prior job because he argued with a general contractor's representative. However, Timms told Stotts, who interviewed him, there was no physical contact involved, and plaintiff has offered no evidence to the contrary.

The other evidence plaintiff cites to support this theory of recovery also fails to demonstrate Ivey had reason to believe that Timms would engage in a physical altercation. Knowledge that he was involved in a verbal disagreement, even one involving profanity and raised voices, with the general contractor's superintendent on the same jobsite, about four to five weeks before August 12, 2009, did not provide Ivey with notice that Timms might

5

strike someone.  Similarly, Timms' apparent failure to attend two mandatory meetings regarding workplace violence does not show Ivey was aware or should have anticipated that Timms might became physical with another worker.[6]  Finally, the incident during which Timms physically escorted a subcontractor out of Ivey's trailer during an earlier work assignment,[7] does not create a fact question as to whether Ivey reasonably should have known that Timms would "create an undue risk of [physical] harm to others."  *Id.*  The reason for the physical contact in that situation, which plaintiff does not dispute, is that the subcontractor became irate and began to threaten the secretary.  There is no indication in the record that excessive force was used or that the subcontractor was injured.

Plaintiff's evidence might suffice to demonstrate that Ivey had reason to know of Timm's propensity to engage in verbal altercations.[8]  However, that, without more, does not show Ivey should have anticipated that Timms would hit and or push Dickey or anyone else at the construction site.  Ivey is entitled to summary judgment on plaintiff's claim based on its alleged negligent hiring, retention and supervision.

Punitive damages

---

[6]*Plaintiff asserts"Ivey did not specifically train Timms on how to resolve conflicts." Plaintiff's response, p. 18. To the extent training is pertinent to this claim, Timms received a copy of Ivey's policy and procedure manual and testified that "[j]ob site violence is one of our weekly topics at safety," that Ivey's policy was to report problems with other employees to a supervisor, and that Ivey would not tolerate jobsite violence. Ivey's Reply, Exhibit 1, pp. 51,54.*

[7]*Plaintiff states in his brief that the incident in Seminole took place over a year before plaintiff's confrontation with Timms. Plaintiff's response, p. 19.*

[8]*However, the proof of verbal confrontations was of isolated incidents, not daily or even frequent occurrences.*

The court previously denied defendant Timms' motion seeking summary judgment on plaintiff's request for punitive damages, noting that it was a close question whether plaintiff would be entitled to punitive damages if he established that Timms was negligent.[9] As Ivey's liability is based on the theory of respondeat superior and because employers may be held vicariously liable for punitive damages, Rodebush, 867 P.2d at 1248 n.8, Ivey is not entitled to summary judgment on plaintiff's punitive damages request.

Accordingly, defendant Ivey's motion for summary judgment [Doc. #52] is **granted** with respect to plaintiff's negligent hiring, retention and supervision claim and **denied** with respect to plaintiff's negligence claim based on respondeat superior and his request for punitive damages. Summary judgment will be entered in defendant's favor on the negligent hiring claim when the case is concluded with respect to all claims and parties. Fed.R.Civ.P. 54(b).

**IT IS SO ORDERED**.

Dated this 17th day of October, 2011.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE

---

[9]The court does not find, as plaintiff suggests in his brief, that the question as to punitive damages has become "less close" as the record has developed. Plaintiff's brief, p. 20.